May it please the Court, David Rosenfeld on behalf of the Appellant to Union, the District Council of Painters. In essence, this is really a dispute about how far the courts are willing to trust an arbitrator under a collective bargain agreement and how broad this Court has read that obligation since the Steelworkers Trilogies in the late 1950s. That's really all this boils down to, because the district court found that this dispute was not arbitrable after he interpreted the collective bargaining agreement to the contrary. Judge Walker, in his memorandum of decision, says, I find that the critical section, section 1, only operates within the metropolitan Dallas area, which is where the Texas local is headquartered. He interpreted that provision to be limited to that area when plainly it applied to the whole jurisdiction of the local. He said, because I find section 1, which is this mangonero clause, doesn't apply here in California by reading the contract, he said this case is not arbitrable and, therefore, dismissed the petition. Well, he didn't dismiss it for lack of arbitrability. He dismissed it for lack of personal jurisdiction. Well, he found that, in effect, he had that they were the same issue. He expressly said in his memorandum that he understood that this was a motion to dismiss on a jurisdictional issue, personal jurisdiction. He said, but it's equivalent to making the arbitrability finding, because if he found it was arbitrable, he said, I would get the, that was his word, to arbitration. So he took them to be the same, and, in effect, they are the same issue in this case with the potential wrinkle that under the Federal Arbitration Act, plainly, there is jurisdiction if you find an agreement to arbitrate in California. It's not quite as clear if jurisdiction rests only upon the Labor Management Relations Act, section 301. I think, given the circumstances of this case, the results are the same because our position has been that the employer, this employer in the construction industry, knows that when it's. Who is this employer? This employer is the Texas company only. BBTX, B&B Glass of Texas. That's your view. That's our view. The other company, Arizona, was served, appeared, but they're out of the case. We're not pursuing them. Right. Because you don't have a contract with them. Exactly. If they're a different company, then there's nothing to talk about. Well, they are a different company, but, of course, our position is they're controlled by Texas. Yes. That's the problem, isn't it? Isn't that really the issue? Well, from Judge Walker's point of view, it is. But from my point of view, it isn't because that is also a question of arbitration. That is, what the record is not clear here, and I certainly can't establish on this record that B&B of Texas controlled this job site in San Jose. And I think counsel and B&B have some argument here, a fair argument, that to apply the so-called Manganero clause to this project could potentially violate Section 80. If you read the Manganero case, you'll see there's language which supports his position and language which supports our position. But fundamentally, then, the question is who decides that question of whether this Manganero clause, the anti-dual shop clause, can be applied to this job site. Is it Judge Walker or is it the district court in deciding the arbitrability question, or is it the arbitrator in deciding whether it is a contract violation? And I think we've established very clearly that when a defense is raised as to the illegality of a contract provision, of a collective bargaining provision, that question of illegality is one that the arbitrator needs to decide. And that's why I began my argument by saying this really is a question, do we trust arbitrators to accept B&B Texas's argument, to listen to it, to consider it, and to say, wait a minute, if you apply this clause to us in these circumstances in San Jose, it would violate the Act. And the arbitrator is perfectly capable of resolving that question and probably better suited than the district court, because that's the fundamental principle of the Steelworkers Trilogy in every case that this Court has decided since then, that arbitrators are better suited to decide contract interpretations and the applicability of Federal labor law to those contracts than district courts. So our fundamental disagreement with the district court in facing this jurisdiction problem was, one, the district court decides that the Manganero clause applies only in Texas, and then he decides that in part because he says to apply it outside of Texas would make it illegal, and he we dispute that, and then he decides that he would make it illegal. And he does not dispute that, but I will concede that he may be correct, but although we dispute he's correct, but that's not for Judge Walker to decide. It's not for the district court. It's for the arbitrator to decide, based on our grievance, that it did apply in San Jose. And this case is actually a very strong one in one respect, which is that this Court, this Ninth Circuit in particular, has recognized sort of various levels of grievance procedures. They've said there are sort of narrow grievance procedures and there are very broad grievance procedures. In this Court, in the Desert Palace case, interstate distributors, and several other cases, has said that when the grievance procedure is very broad, that it encompasses any dispute or controversy affecting either the relations or the collective bargaining agreement, that's the broadest kind of grievance procedure you can have, and therefore all disputes get resolved by the arbitrator, including arbitrability. Because this is a very broad grievance procedure in the District Council 16 agreement, which we said should be enforced under the out-of-area clause, even the question of the interpretation of Section 1, the question of which grievance procedure applies, the question of whether Manganero bars application under these circumstances, all are disputes over the interpretation of the contract and the arbitrability of those disputes, and the merits of those disputes are all, by that line of cases, commanded to the arbitrator and not Judge Walker. Well, if the Texas Corporation that signed this contract were doing the work in, is it California? Right. Then your argument would make sense to me, would be correct. However, there's this additional wrinkle, isn't there, that is that the company purporting to do the work there was not the Texas company, it was a different company. Let me expand the wrinkle a little bit and make it a more difficult argument for me, which then I think proves my point. Supposing the union went on a job site and found a couple of Texas workers who also worked for B&B in Texas and said, wait a minute, you're out here working and this is a violation of the out-of-area clause because you should be paid according to either our agreement or the Texas agreement, not paid by whatever B&B of Arizona applies. And B&B of Texas says, we didn't know we were there, and we said, no, you knew they were there, you violated the out-of-area clause. I think we can convince this Court that that's something that ought to be resolved with the arbitrator, were they working under the out-of-area clause or not. And so our position here is that we have the same situation, isn't it? It's a harder case, that's an easier case. Well, it's harder in the sense that B&B could provide a lot of evidence potentially saying, we didn't employ these people, B&B of Arizona, and we'd say, wait a minute, that's a matter for the arbitrator to determine because we have an assertion that you violated the out-of-area clause. Well, your argument, in a word I assume, is that the Texas company is in California. It's working through its controlled company in Arizona. I'd phrase it slightly different. Our argument is that the arbitrator should decide that. I'd phrase it only slightly different to say that our position is that the Texas company violated the agreement by this arrangement whereby B&B Glass, which has all these commonalities, is doing the work in San Jose. Well, I would understand, but is the question of whether or not the Texas company is doing the work a question for arbitration? That is, to go to arbitration, you usually have to get somebody who signed the contract that has the arbitration clause. Well, B&B Texas admits it signed the arbitration clause, and so on. But if it's not, see, we don't have those Texas employees here, so we don't have that easier case. We have B&B Arizona, and then the issue is that the Texas company is doing the work.   So is that a question that has to be arbitrated? Isn't the legal question whether there's actual control between BBTX and BBAZ? And that question, which goes to either jurisdiction or Mangano, depending on which one, that's a legal question that we have to answer so that you can then go forward and arbitrate. Yes or no. You know, depending on how it's answered, then you arbitrate under the Texas, the agreement signed by Texas. If, in fact, they're one and the same and there's actual control, then you go to arbitration and you figure out the answer. But if there's not actual control, isn't that something, isn't that like a gatekeeping function on that one issue that the district court holds in its hands? Because you also have sort of difficulty phrasing exactly what the test is, and I think that proves my point, that whether it's control or actual control or actual exercise of control. Isn't it actual – that's probably my imprecision rather than the precedent's imprecision. Well, isn't the – isn't the – maybe let's start there. Isn't the test actual control? Well, from my point of view, it is actual control, as the Board interpreted it, meaning the actual right of control, which, plainly, I think we establish. Counsel argues that if you look at other language in Manganaro, it's more than actual right of control or control. You actually have to exercise the control. But that's what you had to establish in the district court. Our point – Isn't that whatever the legal test is you had to establish in the district court? Yes and yes. I mean, that's what Judge Walker said. We dispute that because we say this is an interpretation of the Manganaro clause, whether it is actual or isn't. And I concede that when we go to establish what we have and what the words mean, then B&B of Texas is perfectly free to tell the arbitrator, if you apply it that way, it's illegal, and the arbitrator would say, well, I didn't resolve that question. And that's something the arbitrator is perfectly suited to do. And I want to go back to this gatekeeping function, because there is an issue of burden of proof here, which is that Judge Walker said that the burden was – So the question is, is the arbitrator supposed to establish the – to determine the relationship between B&B Arizona and B&B Texas? Only for purposes of determining whether B&B of Texas violated the agreement. Remember, we're not – we have no claim against B&B of Arizona. It's like a – sort of like a subcontracting arrangement where B&B subcontracts and we say that's a violation of the agreement, you, B&B of Texas, violate it, we're not going after the other company. So the question is whether B&B of Texas violated a provision of the contract by allowing a company over which it exercises some control to do the job. And the point I was about to get to is that Judge Walker, I think, turned the burden of proof on its head by saying that we had to establish to a preponderance of evidence this – the relationship to avoid the A.D. problem. There are two problems with that, and that sort of goes, again, to the heart of the theory of this case. One is that for establishing jurisdiction, we only have to establish a prima facie argument here. And the second is, whether it's preponderance or prima facie, it's still up to the arbitrator to figure out whether the Manganero Clause has been violated or whether – if it has been violated, whether it can be applied under these circumstances, legally or illegally. You know, you go back to the Steelworkers Trilogy, and American manufacturing says unions have the right to even proceed frivolous grievances, in part to clear the air, to resolve problems. And whether or not we're right or not, we think we are. We have the right to have the arbitrator be the gatekeeper and say, this is arbitrable. I get to decide it, union, you're right or wrong, on that issue of interpretation of the Manganero Clause, Section 1 of the Collective Bargain – of Article 18 of the Collective Bargain Agreement. Did you have an option of bringing this action to compel arbitration in Texas? Yes. You wouldn't have had the personal jurisdiction problem. Well, we would – but, you see, that's the point, Your Honor, which is that we wouldn't have had that problem, but we would have had exactly the same argument, which is instead of calling it a jurisdiction. It would have been – it would still be the same – the question would be the same. That's right. And that's what illustrates why I think Judge Walker went off the path here, which is that we would have faced the argument not that there's a jurisdiction question, but that it's not arbitrable because Section 1, the ENB of Texas would have forcefully argued, can't be applied in California because to do so by – because the contract doesn't allow to be applied there, and because it would be unlawful. But if the question of arbitrability itself, that really is a court issue, is it not? Not – yes. I mean, in general, yes, but this Court has said that if the grievance procedure is broad enough to encompass any controversy or dispute over the interpretation of the agreement, unless you can find some other exception. I mean, if it's that broad, then the arbitrability question is for the Court. That's interstate distributors, Desert Palace, and a whole host of cases. And the question is, can you find in this contract either an exception to this issue or other forceful evidence which you can't find? And I just want to reserve some time for a bubble bite, again pointing out that what Judge Walker said was he saw these issues the same. And he said in his excerpt of Record 362, Your Honor, if we brought this in Texas, we would have been faced with the same argument, except Judge – whatever Judge in Texas would have said, according to determine whether this is arbitrable, I'll have to go through the same analysis.   We think that's something for the arbitrator to determine. Thank you. You have about three and a half minutes. Good morning, Your Honors. Robert Spagett, Winston & Strawn, on behalf of B&B Texas. I want to first address the issue that counsel has raised to just let the arbitrator  Before the Court is an issue of jurisdiction. And the court, the district court, has to determine its jurisdiction before it orders anybody to arbitration, before it entertains the case. And so for that threshold reason, I think Judge Walker correctly determined that he had to resolve these issues in order to determine whether he had jurisdiction. Well, in your view, the jurisdictional issue is what? In our view, the jurisdictional issue is that there is no jurisdiction over B&B Texas. It's whether what? It's whether there is personal jurisdiction over B&B Texas. And District 16 essentially cut bait on all minimum contacts analysis. You know, it was laid out in an opening brief on a motion to dismiss it. And District 16 came back and said, that's all irrelevant. They, in effect, conceded that the Texas company has no contacts with the state of California, that the Texas company is doing no business in California, but District Counsel 16 argued that B&B Texas had submitted to the jurisdiction of the California courts by virtue of consent, by virtue of an agreement that it had made. Now, the District Counsel 16 conceded before the district court that that was unprecedented relief, and it's worth reviewing just for a minute how unprecedented that relief really is. District Counsel 16 asserts that B&B Texas consented to jurisdiction to enforce not an agreement that B&B Texas entered into, but a District 16 agreement to which B&B Texas is not even a party, okay, and that District 16 was going to enforce its own collective bargaining agreement in California, although B&B Texas was not a signatory to that agreement, B&B Texas had no contractual relationship with District Counsel 16, B&B never worked in California, it did not do the work at San Jose State, which is a subject of this dispute, and the union conceded, District Counsel 16 conceded that B&B Texas is not an alter ego of B&B Arizona, that they're two legally separate entities. Kennedy. In the hypothetical that your opponent gave, would you be making the same argument if B&B Texas workers were actually in San Jose working on the project? I think the relevant inquiry would be whether B&B Texas was on the project. So in other words, if B&B Texas is doing business in some way, if B&B Texas is loaning its employees and getting paid or, you know, you'd have to show that the Texas company, which is the signatory at least to a collective bargaining agreement, had done something to be in California. Then I think we would have a very different case. It would be relevant to the issue. That surely would be relevant to the issue. But if it wouldn't matter if B&B Texas exercised actual or if there were actual control of B&B Texas over B&B Arizona, correct? If I understood the question, the issue would be whether B&B Texas exercised actual control over the work done by B&B Arizona. I said if that were the case, if it were established that that were the case, that would be the central question. Absolutely. Then I think that would trigger an obligation under the contract between B&B Texas and Local 53. That's the contract that B&B Texas did enter into. And so if B&B Texas reaches out and does business in some other place, then that provision of Article 8, Section 5 of the collective bargaining agreement between B&B Texas and Local 53 would come into play. But it's not going to come into play when Arizona, which is a legally independent company, just does business somewhere. Under those circumstances, there's no basis. Now, what Judge Walker didn't ---- Isn't Manganero the case that you have to argue about? I'm sorry? Isn't Manganero the case you have to argue about and what it means? Yes. And let me address why that's important. We're not addressing Manganero because there's a defense of illegality to the union's interpretation of argument, not at this point in the proceedings. The reason that Manganero is relevant is this. The unions contend that there's jurisdiction over B&B Texas by virtue of consent, consent in a collective bargaining agreement. And therefore, the Court necessarily is going to have to interpret that collective bargaining agreement to find whether there's consent by B&B Texas. And whether it's doing it for purposes of jurisdiction or purposes of deciding a motion to compel arbitration, it's still going to be the decision of the Court to determine whether the parties have entered into an agreement to arbitrate. Okay? So the Court has to look at that language and what the language means. And Manganero is a board case, an NLRB case, that talks about how similar language needs to be interpreted. So we're looking at Manganero for the purpose of determining what the parties in fact agreed to, what the intent of the parties' agreement was. And in Manganero, that case involved unfair labor practice charges. There was a collective bargaining agreement that had substantially identical language to the language that's put before this Court in this case. And the employer argued that the language was unlawful and a violation of board law. And so what the board did was construed the language in that agreement in order to determine whether it would be lawful. And the test that the board used was it said, you know, if the language is clear on its face, we have to read the language as it exists and decide whether it's lawful. If the language is ambiguous, we will construe it in a way that makes it lawful. And it found the Manganero language to be ambiguous. I would submit to the Court, you know, at best the language is difficult to discern and ambiguous. And so the board interpreted this Manganero language in a way that it felt would make it enforceable under board law. And to state it another way, it interpreted it in a way that rendered it lawful and not an unlawful hot cargo agreement under Section 80 of the NLRA, okay? And there are two critical things that the board did to reach this result in interpreting the Manganero language. It said, one, it's not enough to have potential authority. It's not enough to have the potential to exercise control over the job of another employer. That's not enough to meet the right of control test that applies in this case. What you have to have is the actual exercise of control. And that's what this Court has focused in on. But, you know, there certainly is language in Manganero that suggests that majority stock ownership would satisfy all those requirements. You know, the – look, the case goes – I mean, the case wanders through a long analysis, but I would – I mean, it's hard to tell. But I – well, I would submit to the Court that the controlling language is where the Court says, in addition to the clause, it's referring to the Manganero clause, and I'm on page 164 of Manganero near the end of that page. In addition, the clause by its term states that it applies only if the signatory exercises control. This is more than potential authority. It refers to the actual and active control of the work. Finally, the clause by its terms limits its objective to work which the contractor performs. That's another way of looking at this. B&B Texas is not performing the work. B&B Texas is not there. Okay? And to draw the inquiry back to the collective bargaining agreement, which is really what Judge Walker had to interpret, and I think what this Court has to review, in reviewing the language of Section 5, which is the out-of-area clause, Article 8, Section 5 of the collective bargaining agreement between B&B Texas and Local 53, it talks about the employer party here, too. So the collective bargaining agreement doesn't use that language throughout. It uses that language in this section. It talks about when the employer party here, too, does work out-of-area, its obligation is triggered. Okay? And it is that Section 5 that provides the platform for District 16 to argue that it has a basis to insert itself into the Local 53 collective bargaining agreement because it's the Section 5 that says that a local union on the job site can enforce this provision of the collective bargaining agreement. That's Section 5. And so what that Section 5 really means is that if the employer party here, too, i.e., B&B Texas, goes outside of the Texas area in which the Local 53 agreement applies, it's going to be subject to that section. And it's limited in that regard. And they ask you about a wrinkle that comes up with respect to burden of proof. The judge says basically here that jurisdiction and arbitrability collapse because of the circumstances of the consent. But he uses a preponderance standard, or at least he recites in one point a preponderance standard on the jurisdiction where we have generally said it's a prima facie case. Is that enough alone for this to have to go back to the district court? Well, our position, Your Honor, is that that's simply a red herring because the issue that the Court had to decide was whether B&B Texas exercised actual control over the job at San Jose State University. And it was undisputed that the union presented no evidence that it did. The only evidence that the union presented was that it had potential control. That is to say there were interlocking boards of directorate. But the undisputed evidence was that nobody who had an ownership interest in Texas, none of the Rick Churchill who was the actual guy who runs B&B Texas had nothing to do with his job. And so whether the standard is prima facie or a preponderance of the evidence, the union couldn't have met it because it submitted no evidence after there had been discovery. You know, I'd also like to point out, if I may, that another important aspect of the Manganaro case was that the Manganaro decision was not enforceable as it construed it because it only applied in the geographic area in which the local union to which there was an agreement did work. That was a critical aspect of the Manganaro decision. In fact, the board in Manganaro distinguished a previous case, Schaebler. This is in our brief. And in Schaebler, the difference between Schaebler and Manganaro was in Schaebler, the union tried to do exactly what the union is trying to do here, which is to say that you have an anti-dual shop agreement, but you're going to apply it outside of the area where the union does its work, the union that's a party to the agreement does its work. In Schaebler, the board said that's a violation of Section 80. And in Manganaro, the board said we don't have a violation of 80 here because the agreement is construed to apply only in the Washington, D.C., area, which is where the union in which Manganaro had entered into a collective bargain agreement did its work. You know, in the fact pattern of Manganaro, Manganaro was also doing business in Massachusetts. Now, the court didn't get or the board did not get into that, but it's a fact worth pointing out because the board did limit the anti-dual shop language to the area in which the union was doing its work. And that's consistent with the law interpreting Section 80, which says that a clause that would otherwise violate Section 80 may be enforceable if the object is to preserve the work that the union is doing and not to achieve union objectives elsewhere. And we would submit that's exactly what District 16 is trying to do here, is to achieve union objectives elsewhere. Local 53 that entered into this agreement with the anti-dual shop clause is protected because B&B Texas can't come in under its own name or under some other entity and do nonunion work within the geographic limitation of that Local 53 agreement. If B&B Arizona came into Texas to do the work in any of those Texas counties subject to the CBA, that would be a violation unless they used union labor or unless they, you know. So that is another reason why the language of Section 1 can't be interpreted in the way that the union needs in order to get the case ordered to arbitration. And, again, this isn't a defense of illegality. This is trying to determine what the parties agreed to, to determine what the scope of their consent was, so that Judge Walker could determine whether in the first instance there was consent to jurisdiction, and if he got past that issue, whether there would be, whether the case should be sent to an arbitrator. And let me just make one final point, which is that counsel referred to the Steelworkers Trilogy, and Your Honors are undoubtedly familiar with tons of law, you know, sending the case to an arbitrator in a questionable case. I would submit that the union has really skipped over the important analysis. All of the cases that really say, you know, if there's an issue of the scope of the case, you send it to the arbitrator, those cases had the same fact pattern, which is you had a labor union and an employer with a collective bargaining agreement, and you're talking about the scope of the agreement. We don't have that here. In all the cases going back to Warrior & Gulf, AT&T Technologies, and even the McKinstry case that is a centerpiece of the union's argument, make clear that when you don't have, when it's not clear that there was an agreement between parties, then the court has to look at that very carefully. You don't get the presumption as to whether there's an arbitration agreement. You only get that, the presumption favoring arbitrability once you have that threshold inquiry. So if there are any other questions, otherwise, I'm going to close. Thank you, Your Honors. Chief Justice Sotomayor, you asked counsel the weather question, to which you didn't really get an answer until the last part of his argument, in which he says what the district court had to do was figure out what did the parties agree to. That was his phrase. What was the extent of the consent? So what Mr. Spagat is telling you is that the issue before the district court was, what did the collective bargaining agreement between B&B of Texas mean and the local there mean? It's a question of interpretation of the agreement. What did the parties agree to, and what is the extent of their consent? What he said was whether the court has jurisdiction over B&B, Texas, to compel arbitration. That is, whether the parties agreed to arbitrate this dispute. The question is of consent, what did the parties agree, did they agree, that this grievance could be pursued under the melding, the out-of-area clause and the Manganero clause. And then counsel recites this thing about, well, the Texas local is fully protected in Texas, B&B of Arizona can't come in Texas and do work, but he ignores the other half of the clause that says that outside of the jurisdiction, the Texas local is protected because of this 50 percent clause that says if work is done outside of that jurisdiction, 50 percent of the workers have to come from the local and 50 percent from the visiting local, the out-of-area. If B&B, Arizona, went to work in Saipan, would you have the same problem? I'm sorry, inside of? Saipan, Guam, Alaska. Well, Alaska. The answer is I hadn't thought about whether you could apply this out-of-area extraterritoriality concept outside of the 50 States. I can say in Alaska we'd make that argument. And, again, I think you've seen from the cases there are two crafts that do this. The painters and the sheet metal workers have this out-of-area clause that goes all over the country. So that means that B&B of Texas goes to Maine. Okay. I just wanted to – yeah, I understand. Okay. But, again, I could see an arbitrator saying, wait a minute, that wasn't meant to apply. That's a question for the arbitrator. That's a question for the arbitrator. So fundamentally, what Judge Walker did was answer the question, the weather question, by interpreting the agreement. He said the agreement means that Section 1 only applies – I want to just conclude by saying all that Judge Walker said was, in sum, the Court concludes that Section 1, that is the Manganero Clause, is geographically limited to the Dallas metropolitan area. That was the weather question, which was for the arbitrator to decide, not the Court. I don't think that was the weather question that counsel – the way counsel answered it, but that's okay. How does the judge decide whether he has personal jurisdiction over the Texas company? I mean, he's got a judge – a district judge has somebody walk in the door with a complaint. He's got to decide, do I have jurisdiction to start acting? If we apply the Federal – I sort of assumed that was going to be the first question, but since it's the last one, I'll have to answer it this way. Under the Federal Arbitration Act, if it applies to this agreement, it's a matter of where does the agreement say the arbitration can proceed and who can enforce it. So under the FAA, if you apply to this agreement, plainly there's jurisdiction in California because B&B Texas has consented or agreed to allow – But isn't the question whether or not B&B Texas is in California? Well, B&B in – but for the Federal Arbitration Act, okay, it's a little different here. The FAA uses this – the convoluted language to say it's a matter of where you consent to do the arbitration. So a California corporation can consent to do the arbitration here. Okay. We've heard of these. But the more difficult question is what do you do in Section 301? And our view is it's a matter, once again, of where did they agree the grievance could be filed and who could pursue it. We understand. Thank you. Thank you. The case just argued is submitted for decision, and the Court, for this session, stands adjourned.
judges: Schroeder, Canby, McKeown